UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                          Case No. 19-CR-225

CHARLES B. MOORE,

        Defendant.

## PLEA AGREEMENT

1. The United States of America, by its attorneys, Matthew D. Krueger, United States Attorney for the Eastern District of Wisconsin, and Erica J. Lounsberry, Assistant United States Attorney, and the defendant, Charles B. Moore, individually and by attorney Joshua Uller, pursuant to Rule 11 of the Federal Rules of Criminal Procedure, enter into the following plea agreement:

### CHARGES

2. The defendant has been charged in a single-count information, which alleges a violation of Title 18, United States Code, Sections 1591(a)(1), (b)(1), and (c).

3. The defendant has read and fully understands the charge contained in the information. He fully understands the nature and elements of the crime with which he has been charged, and the charge and terms and conditions of the plea agreement have been fully explained to him by his attorney.

4. The defendant voluntarily agrees to waive prosecution by indictment in open court.

5. The defendant voluntarily agrees to plead guilty to the following count set forth in full as follows:

## COUNT ONE

Between May 18, 2018 and August 17, 2018, in the State and Eastern District of Wisconsin, the State and Central District of California, the State and Northern District of Illinois, the State and Northern and Southern Districts of Texas, and elsewhere,

## CHARLES B. MOORE

in and affecting interstate commerce, did knowingly recruit, entice, harbor, transport, provide, and obtain JV-1, having had a reasonable opportunity to observe JV-1, and knowing and in reckless disregard of the fact that JV-1 had not attained the age of 18 years and would be caused to engage in a commercial sex act.

In violation of Title 18, United States Code, Sections 1591(a)(1), 1591(b)(2), and 1591(c).

6. The defendant acknowledges, understands, and agrees that he is, in fact, guilty of the offense described in paragraph 5. The parties acknowledge and understand that if this case were to proceed to trial, the government would be able to prove the facts in Attachment A beyond a reasonable doubt. The defendant admits that these facts are true and correct and establish his guilt beyond a reasonable doubt. The information set forth in Attachment A is provided for the purpose of setting forth a factual basis for the plea of guilty. It is not a full recitation of the defendant's knowledge of, or participation in, this offense.

## PENALTIES

7. The parties understand and agree that the offense to which the defendant will enter a plea of guilty carries a maximum term of life imprisonment, a maximum of life on supervised release, and a maximum fine of $250,000. The count also carries a mandatory minimum of 10 years of imprisonment, at least 5 years of supervised release, and mandatory special assessments

2

totaling $5,100. The parties further recognize that, pursuant to Title 18, United States Code, Section 1593, that restitution in the full amount of the victim's losses, as determined by the court, is mandatory for the offense to which the defendant is pleading guilty. The parties' acknowledgments, understandings, and agreements with regard to restitution are set forth in paragraph 29 of this agreement.

8. The defendant acknowledges, understands, and agrees that he has discussed the relevant statutes as well as the applicable sentencing guidelines with his attorney.

## ELEMENTS

9. The parties understand and agree that in order to sustain the charge of sex trafficking of a child as set forth in Count One, the government must prove each of the following propositions beyond a reasonable doubt:

> First, the defendant knowingly recruited, enticed, harbored, transported, provided, obtained, and maintained JV-1;
>
> Second, the defendant had a reasonable opportunity to observe JV-1, or he knew or recklessly disregarded the fact that JV-1 was under eighteen years of age;
>
> Third, the defendant knew or recklessly disregarded that JV-1 would be caused to engage in a commercial sex act; and
>
> Fourth, the offense was in or affecting interstate commerce.

## SENTENCING PROVISIONS

10. Pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, and based on an individualized assessment of the defendant and the factors set forth in 18 U.S.C. § 3553(a) and (e), the parties agree that a sentence of the minimum mandatory term of ten years of incarceration followed by five years of supervised release is appropriate. The parties further agree that this sentence should run concurrent to any remaining time on the defendant's sentence in

3

Superior Court of California, County of Los Angeles, case BH5547. The parties understand that if the Court accepts this plea agreement, the Court will be bound by this recommendation.

11. The parties further agree that, pursuant to Rule 11(c)(2) of the Federal Rules of Criminal Procedure, there is good cause for the Court to allow the parties to disclose the plea offer *in camera* to avoid generating any undue publicity that might jeopardize the fairness of an eventual trial in the event the Court rejects the proposed plea agreement.

12. The parties further agree that, pursuant to Rule 11(c)(5) of the Federal Rules of Criminal Procedure, should the Court reject the plea agreement, the parties will request that the Court make the required record in camera to avoid generating any undue publicity that might jeopardize the fairness of an eventual trial.

13. The parties agree to waive the time limits in Fed. R. Crim. P. 32 relating to the presentence report, including that the presentence report be disclosed not less than 35 days before the sentencing hearing, in favor of a schedule for disclosure, and the filing of any objections, to be established by the court at the change of plea hearing.

14. The defendant acknowledges and agrees that his attorney has discussed the potentially applicable sentencing guidelines provisions with him to the defendant's satisfaction.

15. The parties acknowledge and understand that prior to sentencing the United States Probation Office will conduct its own investigation of the defendant's criminal history. The parties further acknowledge and understand that, at the time the defendant enters a guilty plea, the parties may not have full and complete information regarding the defendant's criminal history. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentencing court's determination of the defendant's criminal history.

## Sentencing Guidelines Calculations

16. The defendant acknowledges and understands that the sentencing guidelines recommendations contained in this agreement do not create any right to be sentenced within any particular sentence range, and that the court may impose a reasonable sentence above or below the guideline range. The parties further understand and agree that if the defendant has provided false, incomplete, or inaccurate information that affects the calculations, the government is not bound to make the recommendations contained in this agreement.

## Relevant Conduct

17. The parties acknowledge, understand, and agree that pursuant to Sentencing Guidelines Manual § 1B1.3, the sentencing judge may consider relevant conduct in calculating the sentencing guidelines range, even if the relevant conduct is not the subject of the offense to which the defendant is pleading guilty.

## Base Offense Level

18. The parties agree to recommend to the sentencing court that the applicable base offense level for the offense charged in Count One is 30 under Sentencing Guidelines Manual § 2G1.3(a)(2).

## Specific Offense Characteristics

19. The parties agree to recommend to the sentencing court that a two-level increase for commission of a sex act or sexual contact under Sentencing Guidelines Manual § 2G1.3(b)(4) is applicable to the offense level for the offense charged in Count One.

## Acceptance of Responsibility

20. The government agrees to recommend a two-level decrease for acceptance of responsibility as authorized by Sentencing Guidelines Manual § 3E1.1(a), but only if the defendant exhibits conduct consistent with the acceptance of responsibility. In addition, if the court

5

determines at the time of sentencing that the defendant is entitled to the two-level reduction under § 3E1.1(a), the government agrees to make a motion recommending an additional one-level decrease as authorized by Sentencing Guidelines Manual § 3E1.1(b) because the defendant timely notified authorities of his intention to enter a plea of guilty.

## Sentencing Recommendations

21. The parties agreement with respect to sentencing is contained in paragraph 10 above.

22. Both parties reserve the right to provide the district court and the probation office with any and all information which might be pertinent to the sentencing process, including but not limited to any and all conduct related to the offense as well as any and all matters which might constitute aggravating or mitigating sentencing factors.

23. Both parties reserve the right to make any recommendation regarding any other matters not specifically addressed by this agreement.

## Court's Determinations at Sentencing

24. The parties acknowledge, understand, and agree that neither the Sentencing Court nor the United States Probation Office is a party to or bound by this agreement. The United States Probation Office will make its own recommendations to the Sentencing Court. The Sentencing Court will make its own determinations regarding any and all issues relating to the imposition of sentence and may impose any sentence authorized by law up to the maximum penalties set forth in paragraph 7 above. The parties further understand that the Sentencing Court will be guided by the Sentencing Guidelines but will not be bound by the Sentencing guidelines and may impose a reasonable sentence above or below the calculated guideline range.

25. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentence imposed by the court.

6

## FINANCIAL MATTERS

26. The defendant acknowledges and understands that any and all financial obligations imposed by the Sentencing Court are due and payable in full upon entry of the judgment of conviction. The defendant further understands that any payment schedule imposed by the Sentencing Court shall be the minimum the defendant is expected to pay and that the government's collection of any and all court imposed financial obligations is not limited to the payment schedule. The defendant agrees not to request any delay or stay in payment of any and all financial obligations. If the defendant is incarcerated, the defendant agrees to participate in the Bureau of Prisons' Inmate Financial Responsibility Program, regardless of whether the court specifically directs participation or imposes a schedule of payments.

27. The defendant agrees to provide to the Financial Litigation Unit (FLU) of the United States Attorney's Office, upon request of the FLU during any period of probation or supervised release imposed by the court, a complete and sworn financial statement on a form provided by FLU and any documentation required by the form. The defendant further agrees, upon request of FLU, whether made before or after sentencing, to promptly cooperate in the identification of assets in which the defendant has an interest, cooperate in the liquidation of any such assets, and participate in an asset deposition.

### Special Assessment

28. The defendant agrees to pay the special assessment in the amount of $5,100 prior to or at the time of sentencing.

### Restitution

29. The defendant agrees to pay restitution in the amount of $12,973 to JV-1. The defendant understands that because restitution for the offense is mandatory, the amount of restitution shall be imposed by the court regardless of the defendant's financial resources. The

7

defendant agrees to cooperate in efforts to collect the restitution obligation and that restitution is due and payable immediately. The defendant understands that imposition or payment of restitution will not restrict or preclude the filing of any civil suit or administrative action.

## Forfeiture

30. The defendant agrees that the property listed in the information, specifically an LG LM-X210MA ("Aristo 2") cellular phone bearing serial number 805VTWP351905, constitutes the proceeds of the offense to which he is pleading guilty, or was used to facilitate such offense. The defendant agrees to the forfeiture of this property and to the immediate entry of a preliminary order of forfeiture. The defendant agrees that he has an interest the listed property. The parties acknowledge and understand that the government reserves the right to proceed against assets not identified in this agreement.

## DEFENDANT'S WAIVER OF RIGHTS

31. In entering this agreement, the defendant acknowledges and understands that he surrenders certain rights, which include the following:

   a. If the defendant persisted in a plea of not guilty to the charges against him, he would be entitled to a speedy and public trial by a court or jury. The defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the government and the judge all must agree that the trial be conducted by the judge without a jury.

   b. If the trial is a jury trial, the jury would be composed of twelve citizens selected at random. The defendant and his attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising peremptory challenges. The jury would have to agree unanimously before it could return a verdict of guilty. The court would instruct the jury that the defendant is presumed innocent until such time, if ever, as the government establishes guilt by competent evidence to the satisfaction of the jury beyond a reasonable doubt.

   c. If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all of the evidence, whether or not he was persuaded of defendant's guilt beyond a reasonable doubt.

8

      d.      At such trial, whether by a judge or a jury, the government would be required to present witnesses and other evidence against the defendant. The defendant would be able to confront witnesses upon whose testimony the government is relying to obtain a conviction and he would have the right to cross-examine those witnesses. In turn the defendant could, but is not obligated to, present witnesses and other evidence on his own behalf. The defendant would be entitled to compulsory process to call witnesses.

      e.      At such trial, defendant would have a privilege against self-incrimination so that he could decline to testify and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify on his own behalf.

32. The defendant acknowledges and understands that by pleading guilty he is waiving all the rights set forth above. The defendant further acknowledges the fact that his attorney has explained these rights to him and the consequences of his waiver of these rights. The defendant further acknowledges that as a part of the guilty plea hearing, the court may question the defendant under oath, on the record, and in the presence of counsel about the offense to which the defendant intends to plead guilty. The defendant further understands that the defendant's answers may later be used against the defendant in a prosecution for perjury or false statement.

33. The defendant acknowledges and understands that he will be adjudicated guilty of the offense to which he will plead guilty and thereby may be deprived of certain rights, including but not limited to the right to vote, to hold public office, to serve on a jury, to possess firearms, and to be employed by a federally insured financial institution.

34. The defendant knowingly and voluntarily waives all claims he may have based upon the statute of limitations, the Speedy Trial Act, and the speedy trial provisions of the Sixth Amendment. The defendant agrees that any delay between the filing of this agreement and the entry of the defendant's guilty plea pursuant to this agreement constitutes excludable time under the Speedy Trial Act.

9

Case 2:19-cr-00225-PP    Filed 12/11/19    Page 9 of 17    Document 9

35. Based on the government's concessions in this agreement, the defendant knowingly and voluntarily waives his right to appeal his conviction or sentence in this case and further waives his right to challenge his conviction or sentence in any post-conviction proceeding, including but not limited to a motion pursuant to 28 U.S.C. § 2255. As used in this paragraph, the term "sentence" means any term of imprisonment, term of supervised release, term of probation, supervised release condition, fine, forfeiture order, and restitution order. The defendant's waiver of appeal and post-conviction challenges includes the waiver of any claim that (1) the statutes or Sentencing Guidelines under which the defendant is convicted or sentenced are unconstitutional, and (2) the conduct to which the defendant has admitted does not fall within the scope of the statutes or Sentencing Guidelines. This waiver does not extend to an appeal or post-conviction motion based on (1) any punishment in excess of the statutory maximum, (2) the Sentencing Court's reliance on any constitutionally impermissible factor, such as race, religion, or sex, (3) ineffective assistance of counsel in connection with the negotiation of the plea agreement or sentencing, or (4) a claim that the plea agreement was entered involuntarily.

36. The defendant knowingly and voluntarily waives any claim or objection he may have based on venue.

### **Further Civil or Administrative Action**

37. The defendant acknowledges, understands, and agrees that the defendant has discussed with his attorney and understands that nothing contained in this agreement, including any attachment, is meant to limit the rights and authority of the United States of America or any other state or local government to take further civil, administrative, or regulatory action against the defendant, including but not limited to any listing and debarment proceedings to restrict rights and opportunities of the defendant to contract with or receive assistance, loans, and benefits from United States government agencies.

## MISCELLANEOUS MATTERS

38. Pursuant to 18 U.S.C. § 3583(d), the defendant has been advised and understands the Court shall order as a mandatory condition of supervised release that the defendant comply with state sex offender registration requirements. The defendant also has been advised and understands that under the Sex Offender Registration and Notification Act, a federal law, he must register and keep the registration current in each of the following jurisdictions: the location of his residence; the location of his employment; and, if he is a student, the location of his school. Registration will require that the defendant provide information that includes, name, residence address, and the names and addresses of any places at which he will be an employee or a student. The defendant understands that he must update his registration not later than three business days after any change of name, residence, employment, or student status. The defendant understands that failure to comply with these obligations may subject him to prosecution for failure to register under federal law, 18 U.S.C. § 2250, which is punishable by a fine and/or imprisonment.

## GENERAL MATTERS

39. The parties acknowledge, understand, and agree that this agreement does not require the government to take, or not to take, any particular position in any post-conviction motion or appeal.

40. The parties acknowledge, understand, and agree that this plea agreement will be filed and become part of the public record in this case.

41. The parties acknowledge, understand, and agree that the United States Attorney's office is free to notify any local, state, or federal agency of the defendant's conviction.

42. The defendant understands that pursuant to the Victim and Witness Protection Act, the Justice for All Act, and regulations promulgated thereto by the Attorney General of the United States, the victim of a crime may make a statement describing the impact of the offense on the

11

victim and further may make a recommendation regarding the sentence to be imposed. The defendant acknowledges and understands that comments and recommendations by a victim may be different from those of the parties to this agreement.

## EFFECT OF DEFENDANT'S BREACH OF PLEA AGREEMENT

43. The defendant acknowledges and understands that if he violates any term of this agreement at any time, engages in any further criminal activity prior to sentencing, or fails to appear for sentencing, this agreement shall become null and void at the discretion of the government. If this plea agreement is revoked or if the defendant's conviction ultimately is overturned, then the government retains the right to reinstate any and all dismissed charges and to file any and all charges which were not filed because of this agreement. The defendant hereby knowingly and voluntarily waives any defense based on the applicable statute of limitations for any charges filed against the defendant as a result of his breach of this agreement. The defendant understands, however, that the government may elect to proceed with the guilty plea and sentencing.

## VOLUNTARINESS OF DEFENDANT'S PLEA

44. The defendant acknowledges, understands, and agrees that he will plead guilty freely and voluntarily because he is in fact guilty. The defendant further acknowledges and agrees that no threats, promises, representations, or other inducements have been made, nor agreements reached, other than those set forth in this agreement, to induce the defendant to plead guilty.

## ACKNOWLEDGMENTS

I am the defendant. I am entering into this plea agreement freely and voluntarily. I am not now on or under the influence of any drug, medication, alcohol, or other intoxicant or depressant, whether or not prescribed by a physician, which would impair my ability to understand the terms and conditions of this agreement. My attorney has reviewed every part of this agreement with me and has advised me of the implications of the sentencing guidelines. I have discussed all aspects of this case with my attorney and I am satisfied that my attorney has provided effective assistance of counsel.

Date: 12-6-19

_____
CHARLES B. MOORE
Defendant

I am the defendant's attorney. I carefully have reviewed every part of this agreement with the defendant. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

Date: 12/6/19

_____
JOSHUA ULLER
Attorney for Defendant

For the United States of America:

Date: 12/6/19

_____
MATTHEW D. KRUEGER
United States Attorney

Date: 12/6/19

_____
ERICA J. LOUNSBERRY
Assistant United States Attorney

13

# ATTACHMENT A
## Statement of Facts

In May of 2018, JV-1 was 17 years old and living in Milwaukee, Wisconsin. Charles Moore reached out to JV-1 on Facebook and offered to help her pursue a modeling and acting career in Hollywood, California. JV-1 was interested because she believed that Moore had celebrity connections after he showed her a photo of himself with the rapper Chief Keef. (JV-1 later learned that Moore had simply seen Chief Keef by chance on the street in Chicago and asked for a "selfie" with him.)

After a few days of exchanging messages, Moore convinced JV-1 to go to Chicago with him to make some money. When JV-1 asked Moore what she should do about her nine-month-old daughter, Moore told her to leave the baby with her mother. He added that there was nothing for them in Milwaukee and that "this is the only way." Moore texted JV-1, "You belong to the game, and the game pick in [sic] choose and you were the chosen one." Moore followed this message up with a number of images with slogans about pimping, making money, and loyalty. He sent JV-1 a photo of himself and a photo of another female working for him, telling JV-1 that they would be her family. Later that night, he texted JV-1, "Hollywood division here we come!!" Moore also instructed JV-1 to download the Life360 app onto her phone so that he could track her location.

On approximately May 25, 2018, JV-1 ran away from home with Moore. Moore took JV-1 to Chicago with two other women who were performing prostitution dates and told her to learn from them. Around midnight on May 26, 2018, JV-1 and Moore had the following exchange:

| | |
|---|---|
| JV-1: | I got one in the Walmart parking lot |
| Moore: | I know the Jeep |
| JV-1: | Yes |
| Moore: | Go get that money girl |

14

| | |
|---|---|
| JV-1: | Ok |
| JV-1: | Daddy |
| JV-1: | [*unknown image sent*] |
| Moore: | Most definitely am & Yes THE MONEY TEAM!? |
| Moore: | Don't waste your time doing to [sic] much talking lil lady |
| JV-1: | I know |
| Moore: | What he on? Let him know your time not to be wasted in get right to business ok get right to the point |

Additional messages reflect that Moore continued to coach and supervise JV-1 throughout that night and into the next day. Around 1 a.m. on May 27, 2018, the following exchange occurred:

| | |
|---|---|
| JV-1: | Daddy |
| JV-1: | 150 |
| Moore: | What's up? |
| JV-1: | He's taking me to a motel |
| JV-1: | I got a whole 200 now |
| Moore: | K. Go to one of the hotel on Cicero in [sic] let him know that |
| Moore: | Everything good? Make sure you watch him I'm stay on your peas and queues |
| | never let your guard down |
| JV-1: | Daddy what's the motel name to call? |
| JV-1: | He's took my [sic] to bank n gave me the money |
| Moore: | So u at the bank right? |
| Moore: | He can take you to the cicero motel it's right on 45 in Cicero |
| Moore: | Or the shamrock on Roosevelt and Cicero |

15

(Cicero Avenue, as well as the Cicero and Shamrock motels, are known for prostitution.) After an hour had passed, Moore texted JV-1, "Ayeeee hurry it up at less [sic] he spending more money." Messages referring to "dates" and dollar amounts earned continued until approximately 4:30 a.m. that day. Moore called JV-1 a "hoe" and told her to "get that money."

The following day, May 28, 2018, their messages concerning prostitution dates resumed in the early morning hours. JV-1 texted Moore before and after each date, and Moore updated her with how far she still had to go before reaching her $600 daily quota.

JV-1 briefly returned home to Milwaukee on May 28, 2018, however she left again with Moore a couple of days later. On June 3, 2018, JV-1's sister followed JV-1's SnapChat location to Cicero Avenue in Chicago. JV-1 appeared to be dressed to solicit prostitution dates. JV-1's sister confronted JV-1 and asked what JV-1 was doing there. JV-1 said that she was working.

In early June 2018, Moore took JV-1 to California. JV-1's mother kept in contact with JV-1 during this time on various social media platforms. JV-1 told her mother that Moore, whom she referred to as "King" and "Daddy," was going to get her into acting and modeling. JV-1 sometimes sent pictures of herself in California.

When they first arrived in California, Moore bought JV-1 lots of clothing and shoes, and she felt taken care of. Later, however, Moore expected JV-1 to get dressed in the clothes he had bought for her and walk the tracks soliciting prostitution dates, the way he had trained her to do in Chicago. Moore told JV-1 that she needed to repay him for everything he had done and purchased for her, and he required her give him all of the money she made from engaging in commercial sex acts. When JV-1 told Moore she wanted to go home, Moore told her she could not leave until she paid him back everything that he said she owed him.

In early August 2018, Moore took JV-1 to Houston, Texas to prostitute for him. While in Texas, JV-1 told Moore that she was only 17 and that he would go to prison for the things he was

16

making her do. Moore threatened to abandon her in Texas "with all the rapists and murderers." In the early morning hours of August 8, 2018, JV-1's mother received a phone call from the Dallas and Houston Police Departments. They had recovered JV-1 and were transferring her from Houston to a shelter in Dallas. JV-1's mother also received phone calls from Moore, who claimed he had just become aware that JV-1 was only 17 years old.

JV-1 convinced Moore that he should take her to Chicago to work. JV-1 had family in Chicago, and she felt that because it was closer to Milwaukee, she would more easily be able to leave Moore there. JV-1 worked the track on Cicero Avenue in Chicago at Moore's direction, and she used the motel room they shared for some of her prostitution dates. On August 17, 2018, JV-1 was recovered by the Chicago Police Department. She and Moore were staying in a room at the Skylark Motel near Cicero Avenue. Moore was arrested for an open warrant from Long Beach, California, and JV-1 was returned to Milwaukee.

Case agents obtained a search warrant for Moore's Facebook account. The "Intro" section of Moore's Facebook page has the statement, "Mr. SERVE THEP FROM MILWAUKEE TO CALIFRONIA!!.." Many memes and status updates posted to the account make reference to prostitution. For example, one talks about "hoe problems and pimp solutions," and another advises, "Make $$$ in your Spare Time! Become a Hooker!! STOP GIVING IT AWAY!!" Hundreds more similar memes appear in Moore's private messages.

17